## BORG & POWERS FURNITURE COMPANY v. WILLIAM A. REILING AND ANOTHER.[1]

December 31, 1942.

No. 33,211.

[1]Reported in 7 N. W. (2d) 310.

*Nordlin, Oliver & Pleva,* for appellant.
*Tucker & Tucker,* for respondent.

GALLAGHER, CHIEF JUSTICE.

This is a suit for the conversion of certain articles of furniture sold by plaintiff, a furniture dealer, to defendant Gabriel under a conditional sale contract. During the trial plaintiff dismissed the action against Gabriel. The action against Reiling was submitted to the jury, who returned a verdict for plaintiff for $130.60. Reiling appeals from an order denying his motion for judgment *non obstante* or a new trial.

Defendant Gabriel purchased on a contract for deed a dwelling house in Newport from defendant Reiling. Shortly thereafter he moved the furniture here involved into the house. In January 1941, after he had lived in the house about seven months, Gabriel, a postal clerk, was transferred to La Crosse, Wisconsin. About the same time he filed a petition in bankruptcy in federal court. On January 20 or 21, 1941, Gabriel notified plaintiff that he was moving and requested it to take the furniture back, which the company agreed to do at its earliest convenience. On January 24 Gabriel notified defendant Reiling of his intention to vacate the premises and abandon the contract. He testified that he gave Reiling three keys and told him that he had left the other key with Mrs. Brandt, a neighbor, for delivery to the truck driver for Borg & Powers Furniture Company (plaintiff) when he called for the furniture. Gabriel moved his effects from the house on the 24th. During the forenoon of January 28 Reiling called at Mrs. Brandt's house and asked for the key. She told him that Gabriel had instructed her "to give it to Borg & Powers so they could get their furniture." Reiling insisted that Mrs. Brandt give the key to him and told her to "send Borg & Powers to him for it when they came." That afternoon Mrs. Brandt observed a red truck at

the Gabriel house and saw two or three men moving furniture out of the front door. They did not call at her home for the key. She did not get the license number of the truck or see a name on it but did observe that the men "didn't look to be very experienced to move." A few days later Gabriel and a representative of plaintiff company called at Mrs. Brandt's house to find out what had become of the key. Later Mr. Slattery, credit manager for plaintiff company, called to see Reiling at his place of business. Reiling asked how much was owing on the furniture but furnished no information as to its whereabouts, nor did he admit knowing what had become of it.

Defendant testified that he received only two keys from Gabriel and that Gabriel told him that he had left one key with his brother, because his brother was taking care of the fires, and another with Mrs. Brandt. Reiling admitted getting the key from Mrs. Brandt and admitted talking with Slattery. He testified that Gabriel owed him money when he moved. He declined to furnish the names and addresses of the men who worked for him during the latter part of January 1941, although the subject was not pressed very much by plaintiff's counsel. He admitted that his brother was engaged in selling new and used cars and trucks but denied having borrowed a truck from him and denied owning one himself. He also admitted that there was furniture in the house after Gabriel had moved.

■ ■ The first question presented is whether there is sufficient evidence to sustain a finding that defendant Reiling converted the furniture to his own use and benefit. The rule as to what constitutes conversion is stated in Merz v. Croxen, 102 Minn. 69, 72, 112 N. W. 890, 891, thus: "To constitute a conversion of goods, there must be some repudiation of the owner's right, or some exercise of dominion over them inconsistent with such right, or some act done which has the effect of destroying or changing the quality of the chattel." See also Brandenburg v. N. W. Jobbers Credit Bureau, 128 Minn. 411, 151 N. W. 134, L. R. A. 1915D, 474, and Dow-Arneson Co. v. City of St. Paul, 191 Minn. 28, 253 N. W. 6.

It is evident that if defendant Reiling removed the furniture in question or caused it to be removed from the house in which it was located and refused to disclose to the owner where it was, such acts would constitute both a "repudiation of the owner's rights" and an "exercise of dominion over" the furniture, and would amount to a conversion of the property. The only difficulty in the instant case lies in the scantiness of the proof to connect defendant with the disappearance of the furniture. We reach the conclusion, however, with some reluctance, that the testimony, supported by the reasonable inferences to be drawn therefrom, sustains the verdict. The jury and the trial court had the benefit of seeing and hearing the witnesses. We must therefore regard the evidence in the light most favorable to the party who prevailed below. Dow-Arneson Co. v. City of St. Paul, 191 Minn. 28, 253 N. W. 6, *supra.* On some matters, and particularly with reference to the number of keys Gabriel gave Reiling, there was a conflict in the testimony. If the jury believed Gabriel, they could find that Reiling was the only person who had access to the house when the furniture was removed. While access alone would not be sufficient to sustain a verdict for conversion, we have also some evidence of motive. Gabriel owed Reiling money, the amount being uncertain. The jury might also have considered the fact that Reiling procured the key from Mrs. Brandt only a few hours before the furniture was taken. He did not need the key to enter the house, because, according to his own testimony, he had two keys. Further, the jury may have drawn some adverse inferences from defendant's talk with Slattery. On the whole record we believe that the jury could find that Reiling caused the furniture to be removed.

■ Defendant also contends that under the admitted facts he became a gratuitous bailee of the property and therefore could not be guilty of conversion. This point was not pleaded in his answer, and the case was not tried upon that theory. However, if a bailee destroys or appropriates the property in his custody he may be guilty of conversion. Brandenburg v. N. W. Jobbers Credit Bureau, 128 Minn. 411, 151 N. W. 134, L. R. A. 1915D, 474; 6 Am.

Jur., Bailments, pp. 252, 256, §§ 150, 153. There is no claim or showing that the furniture disappeared through mere nonfeasance on the part of defendant. Under the instructions, the jury was required to find for defendant unless they found that he actually removed it or caused it to be removed.

■ We find no merit in defendant's contention that the instructions were inconsistent with the theory upon which the case was tried. The trial court charged that in order to find defendant guilty of conversion they must find that he removed the property. At the close of the charge, apparently at plaintiff's request, the court added the following:

"I think the Court instructed the jury that if they found the defendant took this property from the house in Newport. The jury would not have to find that he personally went there and took the furniture, but they would have to find that he converted this property to his own use. That is the charge here, that he converted it to his own use, but you do not necessarily have to find that he personally went to the house and took the furniture. Is that what you wanted, Mr. Tucker?"

This instruction was proper and consistent with the theory of the trial. We reach the conclusion that the verdict must stand. The order appealed from is affirmed.